**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:16-CV-129-DCK**

| | |
|---|---|
| **JOANNE J. O'NEILL,**        ) | |
|                        ) | |
|            **Plaintiff,**     ) | |
|                        ) | **ORDER** |
|     **v.**                    ) | |
|                        ) | |
| **NANCY A. BERRYHILL,**     ) | |
| **Acting Commissioner of Social Security,**    ) | |
|                        ) | |
|             **Defendant.**     ) | |
|                        ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Defendant's Motion For Summary Judgment" (Document No. 15). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I.      BACKGROUND

Plaintiff Joanne O'Neill ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On August 28, 2012, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning August 1, 2009. (Transcript of the Record of Proceedings ("Tr.") 9, 300-307). The Commissioner of Social Security (the "Commissioner" or

"Defendant") denied Plaintiff's application initially on September 20, 2012, and again after reconsideration on November 8, 2012. (Tr. 151-158, 163-177). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of a right foot injury, necrosis, schizophrenia, bipolar disorder, anxiety, and vision problems.
> The medical evidence shows that your condition is not severe enough to be considered disabling. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 163, 171).

Plaintiff filed a timely written request for a hearing on November 21, 2012. (Tr. 9, 181). On September 8, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge Jim Beeby (the "ALJ"). (Tr. 9, 32-82). In addition, Edward M. Smith, a vocational expert ("VE"), and Samuel Furgiuele, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on October 16, 2014, denying Plaintiff's claim. (Tr. 6-23). On January 5, 2015, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on April 28, 2016. (Tr. 1-3, 5). The October 16, 2014 ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 28, 2016. (Document No. 1). On November 2, 2016, the parties filed a "Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 9).

Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 13-1) were filed January 2, 2017; and "Defendant's Motion For Summary Judgment" (Document No. 15) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 16) were filed March 2, 2017. Plaintiff declined to file a response/reply brief, and the time to do so has lapsed. See "Social Security Briefing Order," Case No. 3:13-MC-198-FDW, (Document No. 1) (W.D.N.C. Dec. 23, 2013).

The pending motions are ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 10, 2009, and the date of his decision.[1]  (Tr. 9, 23).  The ALJ noted that although Plaintiff's alleged disability onset date is August 1, 2009, a prior application was denied at the initial level on September 9, 2009 and that claim was not further pursued.  (Tr. 9).  Therefore, the ALJ determined that the issue of Plaintiff's disability had already been decided through September 9, 2009, and he would only consider claims beginning from September 10, 2009.  Id.

To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(1987). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 22-23).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since September 10, 2009. (Tr. 11-12). At the second step, the ALJ found that Plaintiff's history of avascular necrosis of the right talus status post talar neck fracture with secondary degenerative change, hemorrhagic cyst or tube-ovarian abscess, anxiety disorder, mood disorder, and alcohol

and cannabis dependence, were severe impairments.[2]  (Tr. 12).  At the third step, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr.

12-13).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform

light work activity, with the following limitations:

> can lift and carry, push and pull 20 pounds occasionally, and 10
> pounds frequently.  With normal breaks in an eight-hour day, she
> can sit for six hours, and stand and/or walk for six hours.  The
> claimant can understand and remember simple directions;  and can
> maintain concentration and attention for an adequate period to
> complete short and simple tasks.  The claimant would have some
> social limitations, and would do best in work settings with no
> demand for extensive social interaction.

(Tr. 13-22).  In making his finding, the ALJ specifically stated that he "considered all symptoms

and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs

96-4p and 96-7p."  (Tr. 13).

At the fourth step, the ALJ held that Plaintiff could not perform her past relevant work as

a phlebotomist and medical assistant.  (Tr. 22).  At the fifth and final step, the ALJ concluded

based on the testimony of the VE and "considering the claimant's age, education, work experience,

and residual functional capacity" that jobs existed in significant numbers in the national economy

that Plaintiff could perform.  (Tr. 23).  Specifically, the VE testified that according to the factors

given by the ALJ, occupations claimant could perform included photo copy machine operator,

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a
*de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert,
482 U.S. 137 (1987).

office helper, and sorter.  Id.  Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 10, 2009, and the date of his decision, October 16, 2014.  (Tr. 23).

Plaintiff on appeal to this Court makes the following assignments of error:  (1) the VE's hearing testimony was inconsistent with the Dictionary of Occupational Titles ("DOT");  (2) the ALJ failed to properly consider whether Plaintiff was disabled between August 1, 2009 and September 9, 2009;  and (3) the RFC determination is not supported by substantial evidence.  (Document No. 13-1, p.4).  The undersigned will discuss each of these contentions in turn.

**A.      Dictionary of Occupational Titles**

In her first assignment of error, Plaintiff notes that in responding to a hypothetical from the ALJ, the VE stated that Plaintiff could perform the work of a photocopy machine operator, office helper, and a sorter.  (Document No. 13-1, pp.4-5) (citing Tr. 23, 77-78).  The VE further stated that his testimony was consistent with the DOT.  (Document No. 13-1, p.5) (citing Tr. 80);  see also (Tr. 23) ("Pursuant to SSR 00-4p, the undersigned [ALJ] has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles").

In assigning error here, Plaintiff notes that the DOT "trailers" for each of these job descriptions indicate that they require a "reasoning level" of 2 ("R2").  (Document No. 13-1, pp.5-6).  Plaintiff further notes that R2 signifies that an employee must:

> Apply commonsense understanding to carry out **detailed** but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. (emphasis added)

(Document No. 13-1, p.6).  Plaintiff argues that with the limitation to "short and simple tasks" in the hypothetical, the VE had to name jobs with a reasoning level of 1 ("R1"), instead of R2, to be consistent with the DOT.  Id.  Plaintiff notes that R1 requires an employee to:

> Apply commonsense understanding to carry out **simple one- or two-step instructions**.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Id.

Plaintiff concludes that there is a conflict here between the VE testimony and the DOT that must be resolved.  Id.

In response, Defendant contends that "the ALJ properly asked whether the VE's testimony is consistent with the DOT, the VE testified that it is, and the ALJ so found."  (Document No. 16, p.5) (citing Tr. 23, 77-80).  Defendant argues that there is no apparent conflict between the VE's testimony and the DOT.  Id.

In support of its position, Defendant argues that this Court has generally recognized no conflict under similar circumstances, even in the context of the higher reasoning level of 3.  Id.

> In *Carringer v. Colvin*, the court confirmed that "[t]here is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3."  No. 2:13-cv-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014).  Similarly, in *Clontz v. Astrue*, the court stated that "[t]he requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work."  No. 2-12-cv-00013-FDW, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) (*citing Thacker v. Astrue*, No. 11-cv-00246, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (internal quotation marks omitted), *Williams v. Astrue*, No. 3:11-cv- 00592, 2012 WL 4756066, at *4–5 (W.D.N.C. Aug. 27, 2012)).  And, in *Martin v. Colvin*, the court, citing *Carringer* and *Clontz*, found "no merit" in the plaintiff's argument that Level 3 reasoning "is inconsistent with the RFC's finding that

Claimant is limited to simple, unskilled work." No. 1:14-cv-00234-
RLV, 2015 WL 9094738, at *5 (W.D.N.C. Dec. 16, 2015).

(Document No. 16, pp.5-6); <u>see also</u>, <u>Henderson v. Colvin</u>, 643 Fed.Appx. 273 (4th Cir. Apr. 5,

2016). Based on the cited authority, Defendant concludes the ALJ's reliance on the VE's

testimony was proper.

As noted above, Plaintiff declined to file a response/reply rebutting Defendant's argument

and authority. Moreover, the undersigned notes that in contrast with Defendant's memorandum,

Plaintiff did not cite *any* caselaw to support her argument. Based on review of the ALJ's decision

and relevant authority, the undersigned finds that there was no error here in the ALJ's

determination that the VE testimony was consistent with the DOT. <u>See</u> (Tr. 23, 80).

## B.     Alleged Disability Period

Next, Plaintiff argues that the ALJ erred by determining that "the issue of her disability

prior to September 10, 2009 was *res judicata* due to her administrative denial and that he would

therefore only consider her claims thereafter." (Document No. 13-1, p.7) (citing Tr. 9). Although

Plaintiff acknowledges that a previous application for social security benefits was denied on

September 9, 2009, she suggests that the ALJ should have considered whether she was disabled

beginning from her alleged onset date of August 1, 2009. <u>Id.</u>

Plaintiff notes that "20 C.F.R. §404.988(b) provides, *inter alia*, that a prior decision may

be reopened within four years for good cause." <u>Id.</u> "We will find there is good cause to reopen a

determination or decision if . . . [n]ew and material evidence is furnished." <u>Id.</u> (quoting 20 C.F.R.

§404.989). Plaintiff concludes that "[t]he ALJ did not examine whether there was new and

material evidence as part of the new application that related to the earlier period," and erred by

failing to do so, and considering the period under review to begin September 10, 2009, instead of

August 1, 2009. <u>Id.</u>

In response, Defendant asserts that "[t]he ALJ's action and explanation were proper." (Document No. 16, p.7). Defendant further asserts that there is no requirement that the ALJ examine whether there was new and material evidence that would constitute good cause to reopen the agency's prior determination, even *if* Plaintiff had identified such supposed new and material evidence. Defendant goes on to persuasively argue:

> First, reopening is discretionary. *See* 20 C.F.R. §§ 404.988, 419.1488. Second, reopening for good cause may occur only within four years (title II), or two years (title XVI), of the date of the notice of the initial determination, *see* 20 C.F.R. §§ 404.988(b), 416.14988(b) — which, here, would be within four years, or two years, of September 9, 2009. Thus, the agency lacked the regulatory authority to reopen for good cause at the time of the September 8, 2014 hearing or the ALJ's October 16, 2014 decision; and it would lack the regulatory authority to reopen for good cause on remand. And, third, the court lacks jurisdiction to review the agency's decision to apply *res judicata* and decline to reopen, unless Plaintiff raised a constitutional objection to the application of *res judicata*, which she has not (*see* Pl. Br. 6–7).

(Document No. 16, p.7); see also, Butler v. Astrue, 2009 WL 3648277, at *2–3 (E.D.N.C. Nov. 3, 2009). Defendant concludes that the "ALJ adjudicated the proper time period." (Document No. 16, p.8).

Regarding her second assignment of error, Plaintiff again failed to cite any caselaw in support of her argument and declined the opportunity to challenge Defendant's argument and/or authority. Moreover, Plaintiff's own argument asserts that "a prior decision *may* be reopened within four years for good cause." (Document No. 13-1, p.7) (citing 20 C.F.R. §404.988). Even if Plaintiff's assertion were timely, she has failed to identify "good cause" to reopen the prior determination, or to identify any authority indicating that the ALJ was *required* to examine the time period between August 1, 2009 and September 9, 2009.

The undersigned finds Defendant's arguments to be compelling and agrees that there was no error committed on this issue by the ALJ.

## C.    Residual Functional Capacity

Finally, Plaintiff argues that the ALJ erred because substantial evidence does not support the RFC finding.  (Document No. 13-1, pp.7-25).  Plaintiff alleges that there were five different failures by the ALJ to support RFC related findings with substantial evidence.

Defendant argues that substantial evidence does support the ALJ's findings and that most of Plaintiff's arguments simply (and impermissibly) ask the Court to reweigh the evidence.  See Hancock v. Astrue, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]").

Although the RFC issue presents a closer call than the previous alleged errors, the undersigned respectfully disagrees with Plaintiff's assertion that the ALJ failed to rely on substantial evidence and/or "ignored" evidence of record.  The Court will briefly analyze the parties' arguments below.

### 1.  Standing and Walking

Plaintiff first argues that the ALJ's RFC finding is deficient because substantial evidence does not demonstrate an ability to stand and/or walk six hours in an eight-hour day.  (Document No. 13-1, p.8).  Plaintiff suggests that her condition, due to her right ankle, should have met Listing 1.02 of the Listings of Impairments;  but "[i]nstead, as to her ability to stand and/or walk, the ALJ adopted the opinions of a consulting physician and two non-examining State agency analysts, a physician and a 'single decision maker,' who both based their assessments on that examination, although he said he gave them only 'partial weight.'"  (Document No. 13-1, pp.8-9) (citing Tr. 12,

21).  Plaintiff further notes that the ALJ did not consider her ankle condition serious enough to rank it as "severe."  (Document No. 13-1, p.9).[3]

Plaintiff discusses much of the evidence of record regarding Plaintiff's ankle, including the findings of the consultant, Cordula F. Davis, M.D. ("Davis") on September 8, 2012, and the reports of the two non-examining State agency experts from September 17, 2012 and November 7, 2012. (Document No. 13-1, pp.9-10);  see also, (Document No. 13-1, pp.11-13); (Tr. 753-757).  Plaintiff concludes that the "[o]bjective medical evidence and treatment records establish a severe medical condition afflicting Ms. O'Neil's ankle, avascular necrosis, which would plainly limit her capacity for prolonged standing or walking on a 'predictable, reliable and sustained basis,' the requirement of SSR 96-8p in establishing an RFC."  (Document No. 13-1, p.10).  Plaintiff contends it was error for the ALJ not to recognize her limitations.  Id.

In response, Defendant argues that Plaintiff has not included any substantive argument that her impairment met or equaled the criteria Listing 1.02, and has thus failed to satisfy her burden that remand for such an evaluation would lead to a different result.  (Document No. 16, p.9) (citing Sullivan v. Zebley, 493 U.S. 521, 530–31 (1990) and Shinseki v. Sanders, 556 U.S. 396, 409–10 (2009) (stating that the party attacking the agency determination normally bears the burden of showing that an error was harmful);  Garner v. Astrue, 436 Fed.Appx. 224, 226 n.* (4th Cir. 2011) (applying the Sanders harmless-error standard in a Social Security-disability case);  Keever v. Astrue, 1:11-CV-148-MR-DLH, 2012 WL 2458376, at *7 (W.D.N.C. June 1, 2012) (finding that remand was not necessary, and that any error was harmless, because remand would not have led to a different result), adopted by, 2012 WL 2449859 (W.D.N.C. June 27, 2012).

_____

[3]  The ALJ did include Plaintiff's right ankle as one of a "combination of severe impairments."  (Tr. 12).

Defendant then asserts that "any error in failing expressly to designate (any) particular impairment(s) as *individually* severe is "of no moment" and does not constitute harmful error. (Document No. 16, p.10) (citing Powell v. Astrue, 2:11-CV-041-MR, 927 F. Supp. 2d 267, 275–76 (W.D.N.C. 2013).

The crux of Defendant's response is stated as follows:

> Regarding the merits of the ALJ's finding regarding Plaintiff's ability to stand or walk, Plaintiff effectively invites the Court to reweigh the evidence in keeping with her preferred weighing or interpretation of it. Such a reweighing would be inappropriate, however. When conflicting evidence allows reasonable minds to differ, the responsibility for weighing the evidence rests with the ALJ, such that a reviewing court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Here, the ALJ considered the relevant evidence and weighed it reasonably, such that his finding should not be disturbed.

(Document No. 16, p.10).

The undersigned agrees that Plaintiff's argument essentially invites this Court to reweigh the evidence. The undersigned will respectfully decline the invitation. In this case it appears the ALJ has properly considered relevant treatment records and opinion evidence in reaching his determination of Plaintiff's ability to stand and/or walk during a workday. See (Tr. 15-17, 21) (citing Tr. 95-107, 108-120, 121-134, 134-148, 516-523, 524-538, 683-703, 753-758, 759-815). On this issue, the ALJ opined as follows:

> The claimant alleged that she has problems standing and walking due to her right lower extremity disorder, yet there were very few significant findings in the physical consultative examination to support her allegations. In sum, the functional restrictions alleged by the claimant are disproportionate to the clinical findings in the medical evidence of record.
> . . .
> Even though the examiner found relatively few issues in the examination, out of an abundance of caution, and viewing the

> claimant's testimony in the most favorable light, I have given the
> claimant the benefit of the doubt and put her at light exertional work
> activity instead of medium exertion.

(Tr. 21).

The undersigned is satisfied that substantial evidence supports the ALJ decision, even if Plaintiff (or the Court) might have reached a different result.  See Lester v. Schweiker, 683 F.2d at 841 (quoting Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) ("[i]f there is substantial evidence on the record as a whole to support the Secretary's finding we must accept it although we might disagree.").

## 2.     "Sit and Squirm" Test

Next, Plaintiff contends that the ALJ improperly applied a "sit and squirm" test at the hearing, and thus improperly evaluated Plaintiff according to his own idea of appropriate pain behavior.  (Document No. 13-1, pp.13-14).  Plaintiff suggests that the evidence and testimony show that she can only sit for about ten to thirty minutes, but that the ALJ found "an unlimited ability to sit."  Id. (citing Tr. 44, 755, 377, 73 and 13).  As noted by Plaintiff, the ALJ made the following observation:

> The claimant testified that she could only sit for 10 minutes at a time.
> However the hearing was for more than an hour and the claimant sat
> there without asking to stand up and did not appear uncomfortable
> while sitting (Hearing Testimony).  This inconsistency between her
> testimony and her being able to sit during the entire hearing erodes
> her credibility.

See (Document No. 13-1, p.14) (quoting Tr. 21).

Plaintiff argues that the "Fourth Circuit has long held that it is improper for an ALJ to use his notions of what are appropriate pain behaviors to determine credibility and extent of the pain of a claimant.  Id.  (citing Hicks v. Heckler, 756 F.2d 1022, 1023 (4th Cir. 1985);  Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990);  and Copeland v. Bowen, 883 F.2d 68 (4th Cir. 1989)).

Defendant states in response that Plaintiff's alleged inability to sit more than ten minutes, even though she seemed to sit comfortably for over an hour at the hearing, "was one factor among several that 'erodes her credibility.'" (Document No. 16, p.13) (citing Tr. 21). Defendant contends that this Court has explained the relevant legal standard as follows:

> While an ALJ may not solely base his or her credibility determination on his or her observations during the hearing, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), **an ALJ may include in the decision his or her personal observations as one of many factors that influence his or her credibility determination**, *see* SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996) ("In instances in which the adjudicator has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."); *Case v. Colvin*, No. 1:12-cv-00287-MOC-DLH, 2013 WL 6191036 (W.D.N.C. Nov. 26, 2013) (adopting the Memorandum and Recommendation of the Magistrate Judge); *Massey v. Astrue*, CA No. 3:10-2943-TMC, 2012 WL 909617, at * 4 (D.S.C. Mar. 16, 2012). Thus, while the ALJ could not have relied on his personal observations of Plaintiff's ability to ambulate as the sole basis for finding Plaintiff's statements regarding the intensity of his pain and symptoms not fully credible, the ALJ was free to consider these observations as part of his overall evaluation.

(Document No. 16, pp.13-14) (quoting Armstrong v. Colvin, 5:15-CV-110-DLH-MOC, 2016 WL 7200058, at *5 (W.D.N.C. Sept. 2, 2016), adopted by 2016 WL 6652455 (W.D.N.C. Nov. 9, 2016)) (emphasis added).

Defendant further argues that although Plaintiff criticizes the ALJ for considering "his own idea of appropriate pain behavior," she fails to refer to any medical basis for pain that might reasonably be caused by sitting. (Document No. 16, p.14).

Based on the foregoing, the undersigned is persuaded that there is no error associated with the ALJ's observation of the inconsistency between Plaintiff's testimony and behavior. See (Tr. 21).

### 3. Mental RFC

Plaintiff also contends that the ALJ improperly evaluated Plaintiff's mental illness in his RFC determination. (Document No. 13-1, pp.14-22). As Plaintiff notes, the mental limitations in the RFC include the following:

> The claimant can understand and remember simple directions; and can maintain concentration and attention for an adequate period to complete short and simple tasks. The claimant would have some social limitations, and would do best in work settings with no demand for extensive social interaction.

See (Document No. 13-1, p.15) (citing Tr. 13). Plaintiff argues that the "RFC ignored the interference with reliability and attendance her mental illness would cause" and failed to discuss her ability to perform sustained work activities on a regular and continuing basis. Id.

Plaintiff asserts that rather than indicating a lack of motivation as described by the ALJ, her erratic work history demonstrates the severity of her mental illness and incapacity for sustained employment. Id. (citing Tr. 21, 50, 324-28). Plaintiff further asserts that the ALJ misapplied and/or ignored her Global Assessments of Function ("GAF"); treatment records showing long-term severe mental illness; and deficiencies in activities of daily living. (Document No. 13-1, pp.17-22).

In response, Defendant first argues that it was reasonable for the ALJ, as part of his credibility analysis, to observe that Plaintiff had sustained employment from 2003 through 2006 "at substantial gainful activity levels," and that such employment "signifies a weak employment motivation" since Plaintiff has not provided an explanation supported by evidence of how her mental impairments had worsened since that time period. (Document No. 16, p.15) (citing Tr. 21). Defendant contends it was within the ALJ's prerogative to weigh factors such as work history in evaluating credibility, and that the ALJ's assessment is entitled to deference. Id. (citing Hancock,

667 F.3d at 472;  Rode v. Colvin, 1:13-cv-00252-GCM, 2014 WL 6617261, at *2 (W.D.N.C. Nov. 21, 2014);  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990);  and Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984)).

Defendant further argues that contrary to Plaintiff's arguments, the ALJ acknowledged Plaintiff's variable mental-health symptoms.  (Document No. 16, pp.16-17) (citing Tr. 19). Moreover, Defendant explains that the ALJ adequately addressed the consultants' opinions. (Document No. 16, p.17) ("the ALJ effectively adopted, or gave great weight to, the consultants' narrative-form explanations of their mental-RFC assessments;  they mirror the ALJ's mental-RFC finding precisely (*compare* Tr. 13 *with* Tr. 103–05, 130–32)").

Defendant also effectively addresses Plaintiff's GAF argument, stating that the ALJ is not required to evaluate every GAF score, but the decision shows that the ALJ considered scores indicating moderate symptoms, as well as acknowledging some lower scores.  (Document No. 16, pp.18-19).  Moreover, Defendant explains that the ALJ's reasoning for discounting some GAF scores is sound – noting that a GAF score must be interpreted together with other evidence. (Document No. 16, p.19).

Regarding the long-term severity of Plaintiff's mental illness, Defendant contends that the evidence Plaintiff cites predates the relevant time period or indicates what her complaints were, but does not adequately address the extent to which Plaintiff was limited by such alleged impairments or symptoms.  (Document No. 16, p.20).  Defendant then reasserts that, contrary to Plaintiff's argument, the consultants opined that she was "not significantly limited in her ability to maintain regular attendance."  (Document No. 16, p.21) (citing Tr. 21, 104, 131, 322-23).

Addressing Plaintiff's final mental RFC argument – that the ALJ ignored evidence of difficulties with activities of daily living – Defendant contends the argument lacks merit.

(Document No. 16, pp.21-22). Specifically, Defendant argues that: (1) the ALJ set out *examples* of activities of daily living; (2) the ALJ noted that Plaintiff tried to participate in activities of daily living "even when she was homeless;" (3) and that the consultants did not in fact opine that Plaintiff was moderately limited in the ability to maintain neatness and cleanliness. Id. (citing Tr. 12).

The undersigned respectfully disagrees with most of Plaintiff's argument regarding her mental limitations, and is not persuaded that there is cause to reverse the ALJ or remand for further consideration of this issue. Rather, it appears that the ALJ relied on substantial evidence in reaching his conclusion. Defendant, however, does seem to incorrectly deny that the consultants opined that Plaintiff was moderately limited in her "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." Compare (Tr. 105, 131) and (Document No. 16, pp.21-22). Nevertheless, the undersigned is not persuaded Defendant's mischaracterization requires remand, especially where the RFC specifically noted that Plaintiff should have limited social interaction.

### 4. Hypothetical To VE

Plaintiff further alleges the ALJ erred in this case by giving a hypothetical to the VE that was "too vague" to elicit a response that could constitute substantial evidence. (Document No. 13-1, pp.22-24). The exchange from the hearing that Plaintiff seems to criticize is the following:

> Q Okay. I'll give you two hypotheticals. For the first one, assume a hypothetical individual with the same age, education, and prior work experience as that of the claimant. Further assume that this individual can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour day, this individual can sit for six hours and stand and/or walk for six hours. No, this person can understand and remember simple directions; can maintain concentration and attention for an adequate period to complete short and simple tasks. This person would have some social limitations and what you do best in work settings with

no demand for extensive social interaction. Could this hypothetical individual perform the past work you described as actually or generally performed in the national economy?

A No.

Q Is there any other work this individual could perform?

A Yes. To begin with, your honor, that worker could work as of photocopy machine operator.

(Tr. 76-77).

The crux of Plaintiff's argument is that the ALJ's use of the terms "adequate period to complete short and simple tasks," and "no demand for extensive social interaction" were too vague. (Document No. 13-1, p.23). Plaintiff contends that since the ALJ did not define these terms, "there is no way to know what he meant by this limitation." Id.

In most pertinent part, Defendant provides the following rebuttal:

The Fourth Circuit made a distinction between the complexity of a task and the ability to stay on task; it reasoned that a limitation respecting the latter, but not the former, would account for difficulties in concentration, persistence, or pace. Id. Notwithstanding any argument that it might be easier to concentrate on, persist at, or maintain pace while performing a simple task as opposed to a complex one, the limitation here does not pertain just to complexity. It also pertains to duration: the tasks can only be short, which directly addresses Plaintiff's ability to stay on task, in keeping with Mascio.

Plaintiff further argues that this limitation, as well as the limitation that she work in settings with no demand for extensive social interaction, is impermissibly vague (see Pl. Br. 23–24). Plaintiff's argument lacks merit. First, as noted above, these are the terms of the limitations opined by the State-agency psychological consultants (see Tr. 104–05, 131); Dickens v. Colvin, No. 1:15-cv-878, 2017 WL 318832, at *4 n.6 (M.D.N.C. Jan. 23, 2017) (stating that the ALJ's reliance on the psychological consultants' opinions, that the plaintiff was able to maintain concentration and attention for an adequate period to complete short and simple tasks, "provides further support for his mental RFC and renders Mascio distinguishable"); Hayes v. Colvin,

No. 1:10-cv-379, 2013 WL 2456111, at *3–5 (M.D.N.C. June 6, 2013) (explaining that a psychological consultant's opinion that the plaintiff needed a non-demanding social setting without extensive social interaction reflected a functional limitation that should have been included in the ALJ's mental-RFC finding). Second, the VE expressed no confusion when presented with the hypothetical question containing these limitations (*see* Tr. 76–78). Third, Plaintiff's counsel had the opportunity to, but did not, object to any alleged vagueness in the hypothetical question (*see* Tr. 78–80).

The undersigned finds Defendant's argument to be persuasive here. Although this Court frequently directs remand for alleged errors based on <u>Mascio</u>, the undersigned does not find that this case supports such a conclusion. Unlike other cases resulting in remand, the ALJ here directly addressed, albeit succinctly, Plaintiff's ability to maintain concentration and attention and to stay on task. (Tr. 13).

### 5.     Breathing Problem and Abdominal Pain

Plaintiff's final alleged error asserts that the ALJ erred by ignoring the effects of Plaintiff's breathing problem and abdominal pain. (Document No. 13-1, p.24). Plaintiff argues that the ALJ failed to incorporate limitations based on her hemorrhagic cyst or tube-ovarian abscess, or to at least explain the lack of limitation, even though he found the condition to be severe and noted her history of abdominal pain. <u>Id.</u> Plaintiff also asserts that there is no indication the ALJ considered her alleged difficulty breathing. (Document No. 13-1, pp.24-25)

In response, Defendant notes that it is the Plaintiff's burden to prove functional limitations, and that she has made no attempt to prove, on the basis of medical evidence, a specific function limitation in excess of the RFC finding. (Document No. 16, p.24). Defendant further notes that the ALJ discussed Plaintiff's abdominal pain and treatment, observed that Dr. Davis did not find that the mass resulted in any functional limitation. (Document No. 16, p.24); <u>see also</u>, (Tr. 16) (citing Tr. 710-736) and (Tr. 17) (citing Tr. 753-759). In fact, despite describing the mass on

Plaintiff's right side, Dr. Davis opined that Plaintiff's "only significant complaint on today's exam is decreased range of motion in the right ankle." (Tr. 756). Dr. Davis further opined that even the ankle condition "should not preclude any job performance." Id.

Defendant also asserts that Plaintiff has failed to identify any limitation that should have been included in the RFC related to her alleged breathing difficulty. (Document No. 16, p.24). Again, Defendant cites Dr. Davis' examination, which was cited by the ALJ, addressing Plaintiff's breathing difficulty. The ALJ noted that Dr. Davis found that Plaintiff "was positive for tobacco abuse, with positive findings of shortness of breath during the respiratory exam." (Tr. 17).

Based on the foregoing, it is clear that the ALJ did not "ignore" Plaintiff's abdominal pain or breathing difficulties. The undersigned agrees with Defendant's argument that there is also no cause for reversal or remand based on this final alleged error.

## IV.    CONCLUSION

In short, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Defendant's memorandum effectively addresses Plaintiff's alleged errors. (Document No. 16). Moreover, Defendant identified authority and presented arguments not raised in Plaintiff's motion and memorandum, and as noted above, Plaintiff declined to file a reply/response addressing such arguments and authority. Id.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion For Summary Judgment" (Document No. 13) is **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 15) is **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

**SO ORDERED**.

Signed: June 7, 2017

David C. Keesler
United States Magistrate Judge